**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | | |
|---|---|---|
| **UNITD STATES OF AMERICA** | ) | |
| | ) | |
| | ) | **CASE NO. 4:21-cr-111** |
| **v.** | ) | |
| | ) | |
| **RAPHAEL SAMUEL SMITH,** | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION**
**TO DEFENDANT'S FIRST PARTICULARIZED MOTION TO SUPPRESS**
**WIRETAP (DOC. 371)**

**TO THE HONORABLE COURT:**

**COMES NOW,** the United States of America, by and through David H. Estes, United States Attorney for the Southern District of Georgia, and the undersigned Assistant United States Attorney, and before this Honorable Court, responds to Defendant's First Particularized Motion to Suppress Wiretap (Doc. 371). For the reasons set forth below, the Government opposes said motion.

## INTRODUCTION

In his Motion to Suppress Interception of Wire and Electronic Communications, Defendant Raphael Samuel Smith (hereinafter "Defendant") moves to suppress all evidence obtained through wire or oral communication on the grounds that:

    a.  The communications were unlawfully intercepted;

    b.  The orders of authorization were insufficient on their face;

c.  The applications and court orders were obtained in violation of 18 U.S.C. §§2515 and 2518; and

d.  The interceptions were not made in conformity with the court orders or with the requisites of 18 U.S.C. §2518(5).  (Doc. 371 at 10).

Defendant alleges that the affidavits supporting the wiretaps lacked probable cause (Id. at 11); that there was no necessity for the wiretaps (Id. at 17-21); that the minimization requirements were not complied with[1]; that the orders failed to identify whose communications may be intercepted (Id. at 21); and the application and orders failed to describe the communications to be intercepted (Id. at 22).[2]

The first 10 pages of the Defendant's motion recite general statements of law. (Id. at 1-10).  The remaining pages include assertions that the wiretap authorizations were defective for various reasons.  However, despite apparent citations to affidavits and orders, the motion is not supported by any documents or affidavits.

S.D. Ga. L. Cr. R. 12.1 states, "Where allegations of fact are relied upon that are not supported by the existing record, supporting affidavits must be submitted." It is not sufficient for defendants to "promise to prove at the evidentiary hearing what they did not specifically allege in their motion to suppress." *United States v. Cooper*, 203 F.3d 1279, 1284 (11th Cir. 2000)(quoting *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985).

---

[1] Defendant merely alleges that minimization procedures were not followed, "[U]pon information and belief."  (Doc. 371 at 21).  However, Defendant offers no facts to support this contention.

[2] Again, Defendant provides no factual support to this allegation.

Additionally, it is well settled that a court need not act on general or conclusory assertions. *Cooper,* 2013 F.3d 1279, 1284 (11th Cir. 2000). The motion must allege facts, which if proven, would provide a basis for relief.  A motion to suppress must in every critical respect be sufficiently definite, specific, detailed, and non-conjectural to enable the Court to conclude that a substantial claim is presented. *Id.* See e.g., *United States v. Raheem Williams*, 4:17-cr-00253-WTM-GRS, Doc. 37, Order, 2/1/2018. (Court denied hearing on conclusory motion to suppress not supported by supporting documents).  In the present case, the Defendant's challenge to the wiretap based on the unsubstantiated assertions that law enforcement failed to follow proper minimization procedures and that the description of communications to be intercepted was insufficient should be denied as Defendant's motion fails to include any facts, which if proven, would provide a basis for relief.[3]

## STATEMENT OF PERTINENT FACTS

*a. Brief overview of the drug trafficking organization*

Beginning as early as April 2019, law enforcement received information regarding individuals associated with a drug trafficking organization operating in the Liberty City area of Chatham County.  In August of 2019, law enforcement started an investigation into this drug trafficking organization ("DTO") and completed four (4) controlled purchases of controlled substances.  In February of 2020, law enforcement was granted the first authorization to conduct interceptions of wire and

---

[3] The Government will refer to Affidavits related to TT-15 and TT-17 as "Affidavit TT-15," "Affidavit TT-17," and "Affidavit Extension TT-15."

electronic communications pursuant to § 16-11-64 of the Official Code of Georgia and Chapter 119 of Title 18 of the United States Code.  All told, this investigation included court-authorized wiretaps for 21 target telephones.[4]

The interceptions of wire and electronic communications reveled the individuals listed in this indictment are involved in the DTO drug conspiracy.  This monitoring was done in conjunction with physical surveillance, use of pole camera monitoring, federally authorized GPS tracking devices, cellular GPS tracking, etc.  Additionally, the United States Postal Inspectors Service tracked packages of suspected narcotics originating from outside of the Southern District of Georgia that were shipped to members of the conspiracy.  Agents identified, through the controlled purchases and interceptions of wire and electronic communications, numerous locations used by the DTO.  Numerous search warrants for cell phone data, tracking devices, and suspected narcotics parcels were also executed as part of the investigation.

## LEGAL ANALYSIS

### A. Standing

As an initial matter, the government does not contest that Defendant, who was a party to intercepted communications on TT-15 and TT-17, is an aggrieved person with standing to challenge the legality of the authorizations for Interception of Wire

---

[4] Target Telephone will be refereed to as TT followed by the number of the facility being intercepted (i.e. 1, 2, 3, 4, etc.).

and Electronic Communications as to those target telephones only.[5]   However, Defendant cannot challenge wiretaps where he did not have standing, even when that wiretap was used as the basis to obtain a wiretap where the defendant does have standing. *Brunoehler v. Tarwater*, 743 Fed. Appx. 740 (9th Cir. 2018), *United States v. Wright*, 524 F.2d 1100, 1102 (2d Cir. 1975), *United States v. Scasino*, 513 F.2d 47, 51 (5th Cir. 1975),[6] *United States v. Salazar-Rojas*, Nos. CR13–49RSL, CR13–50RSL, 2015 WL 687348 (W.D. Wash. Feb. 18, 2015).

However, for the reasons set forth below, Defendant's other assertions regarding the propriety of the wiretap authorizations are without merit and the Motions to Suppress should be denied.

## B. The Government did not violate the Defendant's constitutional rights

A wiretap application must include a full and complete statement of the facts and circumstances ... including (I) details as to the particular offense that has been, is being, or is about to be committed.   18 U.S.C. § 2518(1)(b)(I).   This must be supported by the same probable cause necessary for a search warrant. See, *United*

---

[5] All of the Affidavits, Applications, Investigation Warrants and Orders, related to TT-1 through TT-21 have been attached to the Government's Response in Opposition to the Motion to Suppress as to Defendant Adam Garcia. (Doc. 417; Exhibits 1 – 61).   Due to the voluminous nature of Government's Exhibits 1 – 61, the Government will not attach duplicate copies of these exhibit but rather refers the Court to its previous response.   It should be noted that all of the documents that have now been identified as Government's Exhibits 1 – 61 have previously been provided to defense counsel as part of the Government's discovery disclosure.

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), this court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981.

*States v. Hyde*, 574 F.2d 856, 862 (5th Cir. 1978). The issuing magistrate is to make a "practical, common-sense decision" about whether the "totality of the circumstances" indicate that there is probable cause that the sought-for evidence will be obtained. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The authorizing judge's determination is "simply to ensure that there is a 'substantial basis for ... concluding that probable cause existed.'" *Id.* at 238-39 (citation omitted). The practical nature of the judge's decision justifies "great deference" upon review and calls for upholding those findings even in marginal or doubtful cases. See *United States v. Lockett*, 674 F.2d 843, 845 (11th Cir. 1982). Not every failure to comply fully with any requirement provided in Title III would render the interception unlawful. Suppression is required only for a failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures. *United States v. Donovan*, 429 U.S. 413 (1977).

**C. Both affidavits in support of the interception of wire and electronic communications of TT-15 and TT-17 contained sufficient probable cause.[7]**

Title III of The Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520, sets forth the requirements that the government must meet before electronic surveillance may be authorized. These requirements include that an

---

[7] The Government has focused its discussion to those documents related to TT-15 and TT-17. However, because each affidavit related to TT-15 and TT-17 incorporate by reference all affidavits previously sworn to in this case, the Government also incorporates by reference Government's Exhibits 1 – 61 previously attached to Government's Response in Opposition to the Motion to Suppress as to Defendant Adam Garcia. (Doc. 417; Exhibits 1 – 61).

application must include "a full and complete statement of the facts and circumstances ... including (I) details as to the particular offense that has been, is being, or is about to be committed." 18 U.S.C. § 2518(1)(b). "An application for a wiretap authorization must be supported by the same probable cause necessary for a search warrant. ... The issuing [district judge] is to make a 'practical, common-sense decision' about whether the 'totality of the circumstances' indicate that there is probable cause that the sought-for evidence will be obtained." *United States v. Nixon*, 918 F.2d 895, 900 (11th Cir. 1990); *see also United States v. Angulo-Hurtado*, 165 F. Supp. 2d 1363, 1375-76 (N.D.Ga. 2001)(the same standard for judging the adequacy of an affidavit for a search warrant is also applied to affidavits in support of a wiretap). Probable cause does not require overwhelmingly convincing evidence but only "reasonably trustworthy information." *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996). Probable cause must be judged "not with clinical detachment, but with a common sense view to the realities of normal life." *Wilson v. Attaway*, 757 F.2d 1227, 1235 (11th Cir. 1985). "As with other types of search warrants, the probable cause needed to obtain a wiretap must exist at the time the surveillance is authorized." *United States v. Domme*, 753 F.2d 950, 953 (1985). To establish probable cause, the record must demonstrate "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994); *see also United States v. Alfano*, 838 F.2d 158, 161-62 (6th Cir. 1998)("[C]ertainty is not required at this stage. ...Facts can amount to a fair probability without being proof beyond a reasonable

7

doubt or even a prima facie showing."). "Courts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to [judges] in their probable cause determinations." *Miller*, 24 F.3d at 1361. Where, as here, a defendant challenges a judge's determination that probable cause for a wiretap exists on the face of an affidavit, the reviewing court should not review the affidavit de novo for probable cause. *Massachusetts v. Upton*, 466 U.S. 727, 728, 104 S. Ct. 2085, (1984). Rather, when reviewing a wiretap affidavit, the court's task is "simply to ensure that the [judge] had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Nixon*, 918 F.2d at 900. In reviewing the decision to issue a wiretap order, a reviewing court's role is "not to make a de novo determination of the sufficiency of the application;" rather, the reviewing court's role is to determine "if the facts set forth in the application were minimally adequate to support the determination that was made." *United States v. Diaz*, 176 F.3d 52, 109 (2nd Cir. 1999).

A wiretap is presumed to be valid and a defendant has the burden of overcoming this presumption and of proving that the wiretap order was unlawfully obtained. *United States v. Mitchell, III*, 274 F.3d 1307, 1310 (10th Cir. 2001) "[T]he practical nature of the [district court's] decision justifies 'great deference' upon review and calls for upholding the [district court's] findings even in marginal or doubtful cases." *Nixon*, 918 F.2d at 900. "'Reasonable minds frequently may differ on the

question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a [judge's] determination. Thus, the fact that a later trial judge or reviewing court may feel that a different conclusion was appropriate does not require, nor even authorize, the suppression of evidence gained through such a warrant." *Alfano*, 838 F.2d at 162 (citations omitted).

Defendant assert that, "Affidavits for TT-15 and TT-17 were supported by stale and questionably unreliable information." (Doc. 371 at 17). Staleness can be remedied if the Government updates, substantiates, or corroborates older material. *United States v. Harris*, 20 F.3d 445 (11th Cir. 1994). Furthermore, a continuing pattern of criminal activity allows a more liberal examination of information relied upon to substantiate probable cause. *United States v. Terrell*, 912 F.3d 1125 (8th Cir. 2019), *Unites States v. Hyde*, 574 F.2d 856 (5th Cir. 1978). Defendant focuses on information that was first obtained in 2016 to support his argument that this information was stale. (Doc. 371 at 14). However, Defendant fails to discuss the fact that the criminal behavior was part of a longstanding pattern of behavior that had been ongoing since at least 2016 and that information related to the criminal use of TT-15 as recently as 2 days prior the authorization was included in the affidavit to support probable cause. (Affidavit TT-15[8] at 31, 33). Additionally, intercepted calls that involved the coordination of resupplies of narcotics were described, and in some

---

[8] Affidavit TT-15 has been previously attached as Exhibit 33.

instances transcribed, that occurred between June 2, 2020 and June 11, 2020, which was only 13 days prior to the issuance of the wiretap authorization on TT-17. (Affidavit TT-17[9] at 35 – 43).  Finally, multiple narcotics related communications were transcribed and discussed related to conversations that occurred between June 25, 2020 and July 19, 2020, a mere 2 days prior to the authorization of a wiretap extension on TT-17.  (Affidavit TT-17 Extension[10] at 36 – 48).  Clearly, the information relied upon for the issuance of wiretaps on TT-15 and TT-17 was not stale.

In addition to the specific facts and circumstances establishing probable cause to intercept the target facility, each affidavit in support of wiretap authorization for TT-15 and TT-17 included a section entitled, "Circumstances Pertaining to the Ongoing Investigation and Target Subjects of Affidavit," which provided a brief synopsis of information previously obtained during the course of the investigation. (*See e.g.,* Affidavit TT-15 at 27 – 29; Affidavit TT-17 at 30 – 35; Affidavit Extension TT-17 at 33 – 36).  However, this information, which did include older details of the investigation, only provided a backdrop for the next section of the affidavits that identified the most recent facts and circumstances establishing that TT-15 and TT-17 were being used to facilitate the target offenses.  (Affidavit TT-15 at 29 – 35; Affidavit TT-17 at 35 – 46; Affidavit Extension TT-17 at 36 – 50).

---

[9] Affidavit TT-17 has been previously attached as Exhibit 37.
[10] Affidavit Extension TT-17 has been previously attached as Exhibit 41.

As described *supra*, in each affidavit, Agent Brent Minton included details regarding the overall conspiracy but also transcribed relevant portions of intercepted calls and explained why, in his training and experience, these communications were related to the target offenses under investigation.  Notably, specific intercepts that were obtained based on prior wiretap authorizations demonstrated that TT-15 was being utilized by Japheth Charles Orr, aka "Fatz" (hereinafter referred to at "ORR") to facilitate the transportation and distribution of controlled substances.  (Affidavit TT-15 at 29 – 34).

As it relates to TT-17, Agent Minton followed the same structure as he did in drafting the Affidavit for TT-15.  In addition to providing a list of the target subjects, including relevant criminal histories (Affidavit TT-17 at 15 – 26; Affidavit Extension TT-17 at 16 – 28); he included background information related to the ongoing investigation (Affidavit TT-17 at 30 – 35; Affidavit Extension TT-17 at 33 – 36); and then described recent intercepted communications that established that TT-17 was being utilized by Adam Mathias Garcia, aka "Flako" (hereinafter referred to as "GARCIA") to facilitate the transportation and distribution of controlled substances. (Affidavit TT-17 at 35 – 46; Affidavit Extension TT-17 at 36 – 50).

In the present case, there was more than enough evidence that TT-15 and TT-17 were being used for criminal activity to establish probable cause for interception, and Defendant subjected himself to the interception by contacting TT-15 and TT-17. Moreover, "a wiretap must be supported by the same probable cause necessary to obtain a search warrant." *Goldstein*, *United States v. Goldstein,* 989 F.3d 1178, 1192

(11th Cir. 2021).  That is, all that is required for probable cause are "facts showing that (1) a crime is being, has been, or is about to be committed and (2) communications about the crime will be intercepted by the requested wiretap." *Id.* at 1194.  As discussed *supra*, specific details regarding the use of TT-15 and TT-17 to coordinate and facilitate the transportation and distribution of controlled substances was included in each affidavit in question.   The government stands by the proposition that the facts contained therein at the very least establish probable cause that, "(1) a crime is being, has been, or is about to be committed and (2) communications about the crime will be intercepted by the requested wiretap." *Id.*

### D. In each and every affidavit, the Government demonstrated a necessity for the interception of wire and electronic communications.

Pursuant to 18 U.S.C. § 2518(1)(c), an application for electronic interception must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  Yet, "a comprehensive exhaustion of all possible investigative techniques is not necessary before applying for a wiretap." *United States v. De La Cruz Suarez*, 601 F.3d 1202, 1214 (11th Cir. 2010). *See also United States v. Van Horn*, 789 F.2d 1492, 1496 (11th Cir. 1986) (the application for a wiretap "must simply explain the retroactive or prospective failure of several investigative techniques"); *United States v. Perez*, 661 F.3d 568, 581 (11th Cir. 2011) (18 U.S.C. § 2518 only "require[s] the Government to show why alternative measures

are inadequate for 'this particular investigation.'") (quoting *United States v. Carrazana*, 921 F.2d 12557, 1565 (11th Cir. 1991).

"The necessity requirement is designed to ensure that electronic surveillance is neither routinely employed nor used when less intrusive techniques will succeed." *United States v. Giordano*, 416 U.S. 505, 515 (1974); *United States v. Kahn*, 415 U.S. 143, 153 n. 12 (1974).

In determining whether the Government has shown necessity, "the district court is clothed with *broad discretion* in its consideration of the application." *United States v. Alonso,* 740 F.2d 862, 868 (11th Cir. 1984) (emphasis added). *See also United States v. Fudge*, 325 F.3d 910, 919 ("the government's burden of proving necessity is not extraordinarily high").  "The statute was not intended 'to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques.'" *United States v. De La Cruz Suarez*, 601 F.3d 1202, 1214 (11th Cir. 2010)(quoting *Alonso*, 740 F.2d at 868).  In making a determination, courts should evaluate wiretap affidavits "in a 'common sense fashion,' and 'the determination of when the Government has satisfied [the statutory] requirement must be made against flexible standards, and. . . . each case must be examined on its own facts.'" *United States v. Miller*, 431 F.App'x 847, 853 (11th Cir. 2011)(quoting *Hyde*, 574 F.2d at 867).

Similar to the finding of probable cause, the defendant has the burden of overcoming the presumption of validity that attaches to a district judge's findings

13

that the necessity provisions have been satisfied. *United States v. Mitchell*, 274 F.3d 1307, 1310 (10th Cir. 2001). Great deference is accorded a district judge's determination of necessity. *United States v. McGuire*, 307 F.3d 1192, 1197 (9th Cir. 2002); *Oriakhi*, 57 F.3d at 1298. An order authorizing a wiretap "will not be overturned 'simply because defense lawyers are able to suggest *post factum* some investigative technique that might have been used and was not.'" *United States v. Ferrer*, 4:11-cr-00200-WTM-GRS, *Report and Recommendation*, Feb, 2, 2012, citing *United States v. Alonso*, 740 F.2d 862, 868 (11th Cir. 1984) quoting *United States v. Hyde*, 574 F.2d 856, 867 (5th Cir. 1978). For the reasons shown below, the Judge did not clearly err in granting the wiretap application.[11]

Defendant argues that there was an inadequate showing of necessity. The Government disagrees and submits that each affidavit adequately demonstrated the necessity for the court authorized interceptions. Each affidavit specifically explained what techniques had been utilized, why those techniques would not suffice without the aid of wiretaps, and why other techniques were not utilized. Rather than including mere boilerplate assertions, each affidavit identified facts related to the specific difficulties encountered by agents in this case. (*See e.g.,* Affidavit TT-15 at 29 – 35; Affidavit TT-17 at 42 – 77; Affidavit Extension TT-17 at 52 – 85).

---

[11]A district court's determination that the Government's application established the requisite necessity is subject to review for clear error. *United States v. Weber*, 808 F.2d 1422, 1424 (11th Cir. 1987).

The agents were able to develop leads and evidence regarding the conspiracy in this case and outlined these successes in the affidavits. The agents continued to analyze toll records, conduct physical surveillance and used other methods.  Toll record analysis, as the government discussed in its affidavits, revealed only the telephone numbers for callers and persons called, and physical surveillance revealed only that associates came, went and, in some cases, met.  While many of the investigative techniques that were employed provided valuable information, agents are aware that dealers usually only trust a handful of friends, family, and associates. Interception of wire and electronic communications (i.e., wiretaps) are a way to bridge this gap between information obtained through confidential sources and information obtained through wiretaps, where dealers are much more likely to be more transparent.  In the present case, wiretaps were necessary to accomplish the goals of the investigation.

In each affidavit, Agent Minton outlined the six goals of the investigation:

1. To identify as many members of the conspiracy as possible;

2. To determine both their role within the conspiracy and the level of involvement of each;

3. To gather evidence on as many of the conspirators as possible, not just to the level of probable cause, but to the level of beyond reasonable doubt;

4. To seize the largest amount of narcotics possible in order to remove them from our community;

5. To identify and seize all money and other things of value that are currently used to facilitate the conspiracy, their "operating capital" so others cannot continue to use it to finance the drug trade, as well

as profits already realized, in order to remove the motive from narcotics trafficking and deter impressionable potential replacements;

6. To identify and disrupt transportation and distribution methods to make it difficult for potential replacement conspirators to restart the distribution.

(Affidavit TT-15 at 24 - 25; Affidavit TT-17 at 27; Affidavit for Extension TT-17 at 29 – 30).

Agent Minton then describes thirteen (13) additional objections that it is his belief can best be achieved through interception of communications over the target telephones:

1. to gather sufficient evidence to successfully identify, indict, prosecute and convict the target and others yet unknown for the commission of the above stated offense;

2. to identify other members of the narcotic distribution network and ascertain the identities of calling parties, the respective roles of these individuals by the use of both electronic eavesdropping and other investigative means, utilize seized communications, and gather sufficient evidence to indict, prosecute and convict the other members of the network;

3. to identify the precise times when suppliers or co-conspirators place telephone calls into the target phone, or out to those phones by the target, as well as the location from which such calls are made, so that sufficient information may be developed to coordinate surveillance and other investigative means, and thereby better determine transaction meeting places and narcotic storehouses;

4. to identify the precise times when deliveries of narcotics to or between the target and other members of the conspiracy, identified and not yet identified, are made, as well as the location of such deliveries, so that the greatest possible quantities of narcotics may be seized;

5. to ascertain the source or sources of the narcotics distributed by the network;

16

6. to identify the location or locations where narcotics are stored, repackaged and distributed once delivered to members of the conspiracy, so that the largest possible quantities of narcotics may be seized, and thereby removed from the channels of trade in this community;

7. to identify the individuals who purchase or otherwise receive narcotics for resale or for personal use from the target or from other members of this narcotic distribution network, known and yet unknown, and to pinpoint the circumstances under which the narcotics are transmitted, distributed and sold in order to discover the identities of potential witnesses to various aspects of the narcotic distribution and possession crimes in which the target is involved;

8. to determine the amount and frequency of receipt and delivery of narcotics, as well as the cash proceeds relating thereto;

9. to identify the dates, locations, and facilities used by members of the distribution enterprise to transport the narcotics;

10. to identify the existence of any books, records, accounts, papers, receipts, or other documentary physical evidences of the operation, facilities, or instrumentalities used by the drug distribution network, as well as the proceeds gained by the distribution network, and locations where this evidence is stored, including fire-safes and safety deposit boxes, and keys to open those locations;

11. to develop sufficient evidence to demonstrate probable cause that conversations relating to the possession or distribution of narcotics is occurring over and through the use of other cellular/telephone facilities so that when and where appropriate, application for authorization to intercept such wire communications can be made; in particular, evidence obtained from the eavesdropping warrant executed on the target cellular telephone may identify other telephones (cellular phones in particular), which are being used to facilitate the sale, possession, and conspiracy to distribute cocaine;

12. to develop sufficient evidence to demonstrate probable cause that evidence, which may be seized pursuant to a search warrant, may be found at a named location or upon a named individual or a vehicle or a bank safety deposit box so that when and where appropriate, application may be made for such search warrants; and

13. to obtain sufficient evidence in order to remove the largest possible quantity of dangerous drugs from the channels of trade, and to dismantle the narcotic distribution network of which the target is a part, by gathering sufficient evidence to arrest and convict, ORR, CLEVELAND, BADGER, JENKINS, BROWN, SMITH, GRAHAM, NEWTON, BLIGE, JOHNSON, CONTE, THOMAS, TRAYLOR, SMALLS, LEWIS, LIPSEY, NOTTO, CUTTER, SHUMAN, LOPEZ, MONK, CUMMINGS, ROBERTS, UM#7026, WADDY, UM#9122, UM#9716, UM#7152, UF#l 732, their co-conspirators, and others yet unknown.

(Affidavit TT-15 at 25 – 27; Affidavit TT-17 at 28 – 30; Affidavit TT-17 Extension at 30 – 32).[12]

In discussing the necessity requirement for obtaining wiretap authorization, the Court in *Van Horn* states that, "[T]he affidavit need not, however, show a comprehensive exhaustion of all possible techniques, but must simply explain the retroactive or prospective failure of several investigative techniques that reasonably suggest themselves." *United States v. Van Horn*, 789 F.2d at 1496. (S*ee also, United States v. Lilla*, 699 F.2d 99, 104(2d Cir.1983), "there is no requirement 'that any particular investigative proceduresbe exhausted before a wiretap may be authorized.' *United States v. Young*, 822 F.2d1234, 1237 (2d Cir. 1987)"). The 11th Circuit further summarizes the necessity requirement for wiretap interception in *United States v. De La Cruz Suarez*, 601 F.3d1202, 1214 (11th Cir. 2010), which states:

[T]he required explanation of other investigative procedures in an electronic surveillance application is "designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn*, 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974). The affidavit in support of a search warrant "must simply

---

[12] These goals and objectives are the same in all affidavits except for the names of the individuals listed in Objective 13 as this list changed as the investigation developed.

explain the retroactive or prospective failure of several investigative techniques that reasonably suggest themselves." *United States v. Van Horn*, 789 F.2d 1492, 1496 (11th Cir.1986). However, a comprehensive exhaustion of all possible investigative techniques is not necessary before applying for a wiretap. *United States v. Alonso*, 740 F.2d 862, 868 (11th Cir.1984). The statute was not intended "to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques." *Id*.

In the present case, each and every affidavit in support of wire intercepts and all extensions as well contained a section devoted to outlining the need in obtaining wiretap authorization based on the failure of more traditional investigative techniques, or the determination that those techniques would be unlikely to succeed if tried or too dangerous to employ.

In fact, Agent Minton devoted the majority of each affidavit to describing in detail, utilizing specific facts related to this investigation, **eighteen (18)** different investigative techniques that were organized into eleven distinct sections that were either utilized or considered and to what degree of relative success they had and/or discussed the limitations of these investigative techniques in relation to satisfying the goals of this particular investigation.

(a) Interview of Targets or Associates. Affidavit TT-15 at 38 – 41; Affidavit TT-17 at 48 – 52; Affidavit TT-17 Extension at 53 - 57;

(b) Undercover Agents/Officers, Confidential Informants, and Sources of Information. Affidavit TT-15 at 41 - 43; Affidavit TT-17 at 52 – 54; Affidavit TT-17 Extension at 57 – 59;

(c) <u>Search Warrants/Fourth Amendment Waiver Searches.</u> Affidavit TT-15 at 43 – 46; Affidavit TT-17 at 54 – 58; Affidavit TT-17 at 59 – 63;

(d) <u>Controlled Purchases / Drug Debt Paybacks.</u> Affidavit TT-15 at 46 – 48; Affidavit TT-17 58 – 60; Affidavit TT-17 Extension at 63 – 65;

(e) <u>Cellphone Tolls / Pen Registers / Trap and Trace.</u> Affidavit TT-15 at 48 – 51; Affidavit TT-17 at 60 – 61; Affidavit TT-17 Extension at 65 – 67;

(f) <u>Physical and Electronic Surveillance / Tracking Orders.</u> Affidavit TT-15 at 51 – 56; Affidavit TT-17 at 61 – 69; Affidavit TT-17 Extension at 67 – 75;

(g) <u>Examination of Discarded Trash.</u> Affidavit TT-15 at 56 – 62; Affidavit TT-17 at 69 – 73; Affidavit TT-17 Extension at 75 – 79;

(h) <u>Grand Jury Subpoenas</u>. Affidavit TT-15 at 62 – 63; Affidavit TT-17 at 73 – 74; Affidavit TT-17 Extension at 79 – 80;

(i) <u>Arrests.</u> Affidavit TT-15 at 63 – 64; Affidavit TT-17 at 74 – 76; Affidavit TT-17 Extension at 80 – 82;

(j) <u>Financial Investigation.</u> Affidavit TT-15 at 64 – 66; Affidavit TT-17 at 76 – 77; Affidavit TT-17 Extension at 82 – 83;

(k) <u>Traffic Stops.</u> Affidavit TT-15 at 66 – 67; Affidavit TT-17 at 77 – 79; Affidavit TT-17 Extension at 83 – 85.

Furthermore, even assuming *arguendo* that additional traditional investigative techniques should have been considered, failing to utilize an investigative technique does not automatically undermine a showing of necessity.

*See, e.g.*, *United States v. Hyde*, 574 F.2d 856, 867 (5th Cir. 1978[13]) ("courts will not invalidate a wiretap order simply because defense lawyers are able to suggest post factum some investigative technique that might have been used and was not").

Defendant asserts that, "it is completely conceivable that use of interviews, confidential informants, consensual monitoring, along with pen registers, surveillance, and search warrants, could have led law enforcement to achieve the goals of their investigations." (Doc. 371 at 20).  However, this statement is exactly the type of post factum assertion conjured up by defense attorneys that the Court in *Hyde* discounted.

But again, whether agents make an exhaustive attempt of every investigative technique is irrelevant as long as agents can explicitly explain why that specific investigative technique will likely fail, such as is the case here. *See, De La Cruz Suarez*, 601 F.3d at 1214 and *Van Horn*, 789 F.2d at 1496.  The Government acknowledges that traditional methods of investigation revealed some important information. However, nothing in the law requires that traditional techniques be useless. *United States v. Allen*, No. 07-10703, 2008 WL 1777420, *4 (11th Cir. Apr. 21, 2008) (unpublished). *See also United States v. Carrillo*, 123 F.Supp.2d 1223, 1234 (D. Colo. 2000) ("[T]he mere attainment of some degree of success during law enforcement's use of traditional investigative methods does not alone serve to extinguish the need for a wiretap.") (citation omitted) (alteration in original).  Rather,

---

[13] This court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

the need for a wiretap takes into account the usefulness of traditional methods as well as the government's goals, however broad. *Allen*, 2008 WL 1777420, at *4.

In a case factually analogous to the present case (where the investigators' goal was to "identify all the co-conspirators involved. . . and to determine the full scope of the conspiracy"), the Eleventh Circuit held that an affidavit in support of interception of electronic communication met the necessity requirement as:

> [I]t exhaustively described numerous investigative techniques that had been tried with only partial success or that would not likely succeed, including analyzing phone records, using confidential informants, surveillance, interviews, grand jury subpoenas, financial records, and search warrants. As [the agent] explained, although some of these techniques had uncovered useful historical information, a wiretap was needed to identify all the co-conspirators and reveal the full scope of the conspiracy.

*United States v. Goldstein,* 989 F.3d 1178, 1195 (11th Cir. 2021). See *also United States v. Hyppolite*, 609 Fed. App'x 597, 607 (11th Cir. 2015) (an application for interception of wire and electronic communication was accepted based on "affidavits recounting the limitations on the government's use of conventional investigative techniques, because it was *unlikely these conventional techniques would be helpful in the future*") (emphasis added).

Finally, the affidavits adequately explained why other methods were not enough or were likely to fail. *See Van Horn*, 789 F.2d at 1496-97. Comparing the facts of this case with the information provided in *Van Horn*, the government submits it sufficiently demonstrated necessity in its affidavits. The focus is on the nature of the information provided, and not the means by which it was included. *See United States*

*v. Dennis*, 786 F.2d 1029, 1035 (11th Cir. 1986). "It is true that [the Court] must be careful not to permit the government merely to characterize a case as a drug conspiracy that is therefore inherently difficult to investigate." *United States v. Carrazana*, 921 F.2d 1557, 1565 (11th Cir. 1991) (internal marks and citation omitted). "The affidavit must show with specificity why in this particular investigation ordinary means of investigation will fail." *Id.* That said, "the fact that drug investigations suffer from common investigatory problems" does not make problems which appear to be "boilerplate" any "less vexing." *United States v. Milton*, 153 F.3d 891, 895 (8th Cir. 1998). See also *Carrillo*, 123 F. Supp. at 1246. "Drug crime is necessarily harder to detect than other crimes because it is difficult to witness and does not create victims who are compelled to come forward and report the crime." *Milton*, 153 F.3d at 895. *See also Carrillo*, 123 F. Supp. 2d at 1245. Here, the fact that Defendants employed standard techniques of those in the drug trade to avoid law enforcement detection, such as utilizing coded language, engaging in counter surveillance and utilizing residences to store narcotics to avoid detection does not make these "common investigatory problems" any "less vexing". *Milton* at 895.

Under Eleventh Circuit precedent, the affidavits duly demonstrated necessity. *See Van Horn*, 789 F.2d at 1496-97. Accordingly, Defendant's challenges on this issue fail and this Court should deny Defendant's motions to suppress.

### E. Appropriate minimization procedures were followed.

Every order authorizing interception must require that the surveillance "be conducted in such a way as to minimize the interception of communications not

otherwise subject to interception." 18 U.S.C. § 2518(5).  In *Scott v. United States*, 436 U.S. 128, 137, 98 S. Ct. 1717, 1723, 56 L. Ed. 2d 168 (1978), the United States Supreme Court discussed the principles for reviewing claims related to agent's alleged failures to properly minimize intercepts.  Specifically, the Court stated that, "almost without exception in evaluating alleged violations of the Fourth Amendment the Court has first undertaken an objective assessment of an officer's actions in light of the facts and circumstances then known to him." *Id.* at 137.  In further describing the objective analysis regarding minimization, the Court states that, "Congress, by its use of the word 'conducted,' made it clear that the focus was to be on the agents' actions not their motives." *Scott v. United States*, 436 U.S. 128, 139, 98 S. Ct. 1717, 1724, 56 L. Ed. 2d 168 (1978).  Additionally, "[O]nly if the minimization requirement is blatantly disregarded will the information obtained through the wiretap be suppressed." *United States v. Wentworth*, 446 F. Supp. 3d 1302, 1313 (M.D. Ga. 2020) (internal citations and punctuation omitted).  Improper minimization must be egregious or taint the entire investigation for the entire wiretap to be suppressed. *United States v. Suggs*, 531 F. Supp. 2d 13 (D.D.C. 2008), *aff'd sub nom. United States v. Glover*, 681 F.3d 411 (D.C. Cir. 2012), *United States v. Simels*, No. 08-CR-640 (JG), 2009 WL 1924746 (E.D.N.Y. July 2, 2009), *aff'd*, 654 F.3d 161 (2d Cir. 2011).

Defendant's generalized and conclusory statements and arguments fall short of the required detail and specificity that is necessary to challenge the validity of a wiretap based on alleged failures to follow proper minimization procedures. This Court was provided no explanation on how agents failed to minimize appropriately,

nor did Defendant even identify a single call that he asserts should have been minimized that was not.  Defendant fails to make sufficiently definite, specific, and detailed claims to justify consideration by this Court.

In this case, Defendant alleges no specific violations.  Nevertheless, defense counsel inexplicably states that, "[T]he Government's pervasive and substantial failure to minimize non-pertinent calls as a whole in this case allows the inference that the Government engaged in an essentially warrantless general search warranting the suppression of all intercepted calls." (Doc. 371 at 21).  Nothing could be further from the truth.

The Government moves this Court to deny the motion based on alleged failures to properly minimize because it lacks specificity. *See, United States v. Carter*, 449 F.3d 1287, 1295 (D.C. Cir. 2006) (defendant must identify particular conversations so that the government can explain their non-minimization; general allegation that government did not minimize is inadequate).

Even assuming *arguendo* that the Defendant had identified specific intercepts that were improperly monitored, this would not warrant suppression of the entire wire unless such violations were egregious and tainted the entire investigation. ("Based on the record and absent any specific minimization challenge by Wentworth or Tyquiengco, the Court is satisfied that the Government made reasonable efforts to minimize the intrusion on TT#1 through TT#5.  Their conclusory allegations, without more, certainly do not show the Government 'blatantly disregarded' the minimization

25

requirement." *United States v. Wentworth*, 446 F. Supp. 3d 1302, 1313–14 (M.D. Ga. 2020).).

Finally, a standard of reasonableness is applied to the government's actions regarding electronic interceptions. *See United States v. De La Cruz Suarez*, 601 F.3d 1202, 1215 (11th Cir. 2010); *See Also United States v. Van Horn,* 789 F.2d 1492, 1501 (11th Cir.), cert. denied, 479 U.S. 854, 107 S.Ct. 190, 93 L.Ed.2d 123 (1986).

1) <u>The Minimization procedures were outlined in the affidavits for TT-15 and TT-17 as well as the Instructions for Wire Interceptions.</u>

The minimization requirement is satisfied if the agents overall have shown a high regard for the right of privacy and have done what they reasonably could do to avoid unnecessary intrusion. *United States v. Oriakhi*, 57 F.3d 1290 (4th Cir. 1995). A Court must evaluate the government's minimization efforts on a case-by-case basis. *Scott v. United States*, 436 U.S. 128, 139 (1978). Relevant considerations include: the number of target individuals, the ambiguity of intercepted conversations, the complexity of the investigation, the extent of the issuing judge's involvement in the electronic surveillance, and whether the supervising attorney circulates a memorandum fully setting forth instructions that were consistent with the minimization requirements. *United States v. Malekzadeh*, 855 F.2d 1492, 1495 (11th Cir. 1988), *United States. V. Ozar*, 50 F.3d 1440, 1447 (8th Cir. 1995).

Given the purposes of the wiretap and the totality of the circumstances of this case, the Court should find that the agents made reasonable attempts to minimize

26

the interception of non-relevant conversations.   Agent Minton described the minimization procedures that were to be followed by all monitors in the affidavits in support of wiretap authorizations for TT-15 and TT-17.   Agent Minton averred that interceptions would be suspended when:

> it is determined that the conversation is unrelated to communications subject to interception under OCGA 16-11-64, by and through Chapter 119 of Title 18, United States Code.  Interception will be suspended when it is determined either through voice identification or physical surveillance, that the parties are not participants in the conspiracy, unless it is determined during the portion of the conversation already overheard that the conversation is criminal in nature. Even if one of more of the subjects or their confederates, when identified, are participants in the conversation, monitoring will be suspended when the conversation is not criminal in nature or otherwise related to the offenses under investigation. Spot monitoring will be utilized to ensure that the minimized conversations have not become criminal in nature. Special attention will be given to make certain that all privileged conversations are minimized. Finally, all monitors involved with this investigation will receive a briefing regarding the minimization requirements as provided by statute and the courts by an Assistant District Attorney familiar with the authorized purpose of these interceptions prior to being allowed to monitor live calls.

(Affidavit TT-15 at 73 – 74; Affidavit TT-17 at 86 – 87; Affidavit for Extension TT-17 at 93).  Furthermore, in every order, the court outlined the laws/requirements of minimization.  (Order TT-15[14]; Order TT-17[15]; Order for Extension TT-17[16]).

---

[14] The Application, Investigation Warrant and Order for TT-15 have been previously attached as Exhibit 34.
[15] The Application, Investigation Warrant and Order for TT-17 has been previously attached as Exhibit 38.
[16] The Application, Investigation Warrant and Order for Extension TT-17 has been previously attached as Exhibit 42.

Proof that these words were communicated and understood by agents who monitored the TT-15 and TT-17 is evidenced by the memorialization in writing of the "Instructions For Wire Interception." (*See* Minimization Instructions TT-15, attached as Exhibit A; Minimization Instructions TT-17, attached as Exhibit B). Specifically, these instructions state, "[Y]our objective is to execute the Orders, intercepting only those communications that are specifically designated and minimizing the interception of non-pertinent or privileged communications." (Exhibit A at 1; Exhibit B at 1).

These documents contain 15 pages of instructions regarding the procedures to be followed as it relates to minimization, including a signature page containing the signatures of every monitor acknowledging that, "I have read and understand this document and all supporting documents, and have been briefed by either ADA Ian R. Heap or ADA Kurtis C. Bronston." (Exhibit A at 12; Exhibit B at 12). There is nothing in the record that gives any reason to believe that agents did not take these briefings seriously or follow the instructions that they were given.

2) A statistical analysis of the interceptions clearly shows that minimization procedures were followed.

According to a statistical analysis of all interceptions obtained from all 21 target telephones, not just TT-15 and TT-17 that this Defendant was intercepted on, shows that 11% of the total calls were minimized. (*See* Exhibit C). However, this number is somewhat misleading considering the fact that 81% of all intercepted calls were less than 2 minutes. (Id.) As it relates to TT-15, only 1% of the calls were

minimized; but over 99.9% of the calls were less than 2 minutes. (*See* Exhibit D). Regarding TT-17, 24% of the calls were minimized; however, 95% of all intercepted calls were less than 2 minutes. (*See* Exhibit D). As it relates to all calls less than 2 minutes, minimization does not require that monitoring cease as, "[C]onversations lasting less than two minutes are considered too brief to identify the caller and characterize the conversation as merely social or possibly tainted." *United States v. De La Cruz Suarez*, 601 F.3d 1202, 1215 (11th Cir. 2010) (internal quotations omitted).

## F. The Orders are not invalid on their face

### a. The Orders adequately specify the persons whose communications may be intercepted.

Defendant argues that the orders are invalid on their face in that they fail to specify the persons whose communications may be intercepted. 18 USC § 2518(4). (Doc. 371 at 21). The Defendant further argues that "this requirement is separate and distinct from the requirements of 2518(1)(b)(iv) (requiring the application specify the identity of the persons known to be committing the offense) and 2518(3)(a) (requiring the Judge to find probable cause that an individual is committing a particular offense prior to entering a wiretap order)." (*Id.*). In support of his position, the Defendant argues that the orders were invalid because they did not name individuals as target subject after they were identified by law enforcement. (*Id.* at 22).

However, "[a] wiretap application need not provide probable cause of criminal activity for each person named in an application. . . What is required is sufficient information so that a judge could find probable cause to believe that the telephone in question is being used in an illegal operation." *United States v. Domme*, 753 F.2d 950 at 954 n. 2 (11th Cir. 1985) (citations omitted).  As discussed *supra*, the facts contained in the Affidavits related to TT-15 and TT-17 provide more than enough probable cause for the authorizing judge to have determined that these target telephones were being used in an illegal operation.

While it is true that Defendant Smith is not identified in the Affidavit, Application or Order authorizing interception of TT-15, this does not run afoul of the law as the Order authorizing interception need only specify, "the identity of the person, **if known**, whose communications are to be intercepted." 18 U.S.C. § 2518(a) (emphasis added).  Defendant Smith's identity was not known at the time that the Order for TT-15 was signed as he had not been intercepted on prior target telephones. Defendant's motion to suppress brief even acknowledges that Smith had not been intercepted prior to TT-15.  (Doc. 371 at 2) ("Movant's communications were first intercepted based on the 'Sealed Court Order' dated June 10th, 2020 and signed by Hon. Louisa Abbot, Judge, Superior Court of Chatham County, and referenced as 'Target Telephone -15 and/or TT-15'").

In *United States v. Kahn,* 415 U.S. 143 (1974), the Supreme Court rejected a Court of Appeals interpretation of Title III which would require any application for judicial authorization to, "'identify all persons, known or discoverable, who are

committing the offense and whose communications are to be intercepted.'  But that is simply not what the statute says: identification is required only of those 'known' to be 'committing the offense.'  Had Congress wished to engraft a separate requirement of 'discoverability' onto the provisions of Title III, it surely would have done so in language plainer than that now embodied in s 2518." *United States v. Kahn*, 415 U.S. 143, 152–53, 94 S. Ct. 977, 983, 39 L. Ed. 2d 225 (1974).

The Affidavit in support of an Order authorizing the interception of TT-17 does identify Raphael Samuel Smith as one of the main subjects of the investigation, even going so far to include a photograph of him, his nickname ("Ray Ray"), his social security number, his FBI number, Georgia State ID number and the phone number that he was believed to be utilizing.  (Affidavit TT-17 at 16 – 17; Affidavit Extension TT-17 at 17).  Defendant Smith is then identified multiple times, albeit with less detailed information, in the Application for wiretap authorization for TT-17.  (Application TT-17 at 3, 6, 7, 16, 17, 18, 19; and Application Extension TT-17 at 3, 6, 7, 18, 20, 21).  The Application TT-17 and Application Extension TT-17 further provides that the, "basis of probable cause referred to in this application are the facts, circumstances, observations and data described in the affidavit of Agent Brent Minton of the Chatham-Savannah Counter Narcotics Team (hereinafter CNT), whose affidavit is expressly incorporated by reference in this application, and a [sic] made a part of it."  (Application TT-17 at 2; Application Extension TT-17 at 2).

Although the state court Order signed by the Honorable Louisa Abbot, Judge of the Superior Court of Chatham County for TT-15 and 17 do not identify the

31

Defendant, the Investigation Warrants signed by Judge Abbot do as is proper pursuant to Georgia law which states,

> (c) Upon written application, under oath, of the district attorney having jurisdiction over prosecution of the crime under investigation or the Attorney General made before a judge of superior court having jurisdiction over the crime under investigation, such court may issue an investigation warrant permitting the use of a device for the surveillance of a person or place to the extent the same is consistent with and subject to the terms, conditions, and procedures provided for by 18 U.S.C. Chapter 119. Such warrant shall have state-wide application and interception of communications shall be permitted in any location in this state.

Ga. Code Ann. § 16-11-64. Therefore, in the State of Georgia, the "Investigation Warrant" is the court order that authorizes interception of a target facility and in the present case it identified Defendant as a person to be intercepted. (Investigation Warrant TT-17 at 3; Investigation Warrant Extension TT-17 at 3). Furthermore, the Investigation Warrants for TT-17 specifically state that the application and affidavit in support of the Investigation Warrant, "are expressly incorporated by reference in this Investigation Warrant, and made a part of it in support of the allegations thereof." (Investigation Warrant TT-17 at 1; Investigation Warrant Extension TT-17 at 1).

### b. The Orders adequately provide a description of the type of communications sought to be intercepted.

Lastly, Defendant states, without support, that, "the application and orders are insufficient on their face in their failure to provide a sufficiently particular description of the type of communication sought to be intercepted as required by 18

U.S.C. §2518(1)(b)(ii) and 18 U.S.C. §2518(4)(c)." (Doc. 371 at 22).  This one sentence is the sum total of Defendant's argument regarding the insufficiency of the description of the communications to be intercepted.

Defendant's allegation that the Orders are insufficient without identifying the manner in which they are insufficient is nothing more than a general or conclusory assertions that the Court need not act upon. *Cooper,* 2013 F.3d 1279, 1284 (11th Cir. 2000).

In *United States v. Najera-Perez*, No. 1:12-CR-232-2-CAP, 2014 WL 888651, at *17 (N.D. Ga. Mar. 6, 2014) the Court states:

> Defendant contends that the applications for the wiretaps and the Orders authorizing them are insufficient on their face because they fail to provide a sufficiently particular description of the type of communication sought to be intercepted in violation of 18 U.S.C. §§ 2518(1)(b)(iii) and 2518(4)(c) Defendant, however, does not provide any hint as to how the descriptions within the applications and Orders were deficient. Issues raised in a perfunctory manner, without supporting arguments and citations to authorities, are generally deemed to be waived. *United States v. Langford,* 647 F.3d 1309, 1331 (11th Cir.2011).

In this case, Defendant has raised this challenge to the sufficiency of the Order, in the same perfunctory manner, without supporting arguments and citations to authorities as the Defendant in *Najera-Perez,* and as such this argument should be deemed to be waived.

## G. The Good Faith doctrine does apply to wiretaps.

This Court held that the good faith exception to the exclusionary rule applies to wiretaps. *United States v. Malekzadeh*, 855 F.2d 1492, 1497 (11th Cir. 1988). In *Malekzadeh*, this Court affirmed the district court's ruling that wiretap evidence

would not be suppressed where an agent relied on and referred to public records of an apparently valid earlier search warrant in the wiretap application. *Id.* "The trial court based its decision on the agent's good faith reliance on public records," and this Court held that the use of public records "was objectively reasonable [, and that] [e]xcluding the fruits of the wiretap would in no way work to deter the conduct of the officer who relied on public information as a basis for the wiretap application." *Id.*

The good faith exception to the exclusionary rule applies to wiretap applications and orders. *United States v. Malekzadeh*, 855 F.2d 1492, 1497 (11th Cir. 1988). In *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405 (1984), and *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S. Ct. 3424 (1984), the Supreme Court established a good faith exception to the exclusionary rule where officers placed reasonably objective reliance on a search warrant later determined to be defective. A court will not suppress evidence obtained pursuant to a warrant issued without probable cause unless "(1) the issuing magistrate was knowingly misled; (2) the issuing magistrate wholly abandoned his or her judicial role; (3) the application was so lacking in indicia of probable cause as to render reliance upon it unreasonable; or (4) the warrant was so facially deficient that reliance upon it is unreasonable. *Rijo*, 2006 WL 3056526 at*12 (*citing Leon*, 468 U.S. at 923). The good faith exception requires suppression "only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Accaardo*, 749 F.2d 1477, 1480 (11th Cir. 1985) (*quoting Leon*, 468 U.S. at 926, 104 S. Ct. at 3422); *United States v. Martin*, 297 F.3d

34

1308, 1313 (11th Cir. 2002). The totality of the circumstances surrounding the issuance of the warrant may be considered when making this decision. *Accaardo*, 749 F.2d at 1481.   In the event this Court finds that the Court made impractical, unreasonable, and unrealistic findings of probable cause, the evidence should not be suppressed because the investigators acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment. *United States v. Leon*, 468 U.S. 897 (1984).

### E.    There is no need for a hearing in this matter.

"A motion to suppress must allege facts which, if proven, would provide a basis for relief.  A court need not act upon general or conclusory assertions founded on mere suspicion or conjecture." *United States v. Corriertte*, 171 Fed. Appx. 319, 322 (11th Cir. 2006)(quoting *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985)). "The court has discretion in determining the need for a hearing." *Richardson*, 764 F.2d at 1527.  When a defendant raises a challenge that an application fails on its face to satisfy Title III's statutory requirement, the court first must examine whether the affidavit is facially sufficient, which does not require a hearing. *United States v. Ashley,* 876 F.2d 1069, 1073 (1st Cir. 1989). Furthermore, as Defendant has not alleged that the affidavits contained deliberate misstatements and omissions of material fact, no evidentiary hearing to resolve these issues is required. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

Because the defendant is challenging only the face of the affidavits and did not demonstrate any arguable misconduct that justifies a Franks hearing, there is no

need for a hearing. All of the matters in dispute may be resolved by reviewing the four corners of the documents in question.

## CONCLUSION

Defendant's motion to suppress any evidence derived from the intercepts of TT-15 and TT-17 lack support in the facts and the law.  The Affidavits, Applications, Investigation Warrants and Orders met all of the technical requirements of Title 18 United States Code, Section 2518; provided ample probable cause for their issuance; demonstrated the necessity for requesting wire and electronic interceptions; and agents appropriately followed minimization procedures.   For these reasons, this Court should, without need for any evidentiary hearing on any issue, deny the Defendant's motions to suppress evidence arising from the Title III wiretaps.

This 1st day of April 2022.

Respectfully submitted,

DAVID H. ESTES
UNITED STATES ATTORNEY

*/s/ Noah J. Abrams*
Noah J. Abrams
Assistant United States Attorney
Georgia Bar Number 114354

22 Barnard Street, Ste. 300
Savannah, GA, 31410
912-652-4422
noah.abrams@usdoj.gov

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

**UNITD STATES OF AMERICA**    )
    )
    )    **CASE NO. 4:21-cr-111**
**v.**    )
    )
**RAPHAEL SAMUEL SMITH**    )
    )

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned AUSA certifies that a copy of this response has been filed electronically on the ECF system and therefore served on parties.

Respectfully submitted,

DAVID H. ESTES
UNITED STATES ATTORNEY

*/s/ Noah J. Abrams*
Noah J. Abrams
Assistant United States Attorney
Georgia Bar Number 114354

22 Barnard Street, Ste. 300
Savannah, GA, 31410
912-652-4422
noah.abrams@usdoj.gov

37