UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITD STATES OF AMERICA ) | |
| ) | |
| ) | CASE NO. 4:21-CR-111-6 |
| v. ) | |
| ) | |
| ) | |
| RAPHAEL SMITH ) | |

GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT RAPHAEL SMITH'S AMENDED MOTION TO SUPPRESS SEARCH WARRANT AND OTHER EVIDENCE (Doc. 728)

TO THE HONORABLE COURT:

**COMES NOW** the United States of America, through Jill E. Steinberg, United States Attorney for the Southern District of Georgia, and the undersigned Assistant United States Attorney, and before this Honorable Court, responds to Defendant's Amended Motion to Suppress Search Warrant and Other Evidence filed on February 28, 2023. (Doc. 728). For the reasons set forth below, the Government opposes the motion.

INTRODUCTION

Defendant filed his original motion to suppress on January 26, 2022 pursuant to the Court's scheduling order. (Doc. 341). On the same date, Defendant filed a request for additional time to file Particularized Motions to Suppress. (Doc. 339). The Court granted the Defendant until February 15, 2022 to do so. (Doc. 351). Defendant then filed two additional Motions to Suppress. (Doc. 371, 372.). Thereafter, the government filed its written responses to each of Defendant's motions On April 3,

1

2022. (Doc. 419, 430, 431). The matter was then scheduled for an evidentiary hearing which was then continued on several occasions until March 2, 2023. Three days prior to that hearing, over a year after his deadline to amend had passed, Defendant submitted his amended motion. (Doc. 728). As result, the evidentiary hearing was again continued, and the Government was given until April 14, 2023 within which to respond to the amended motion. (Doc. 732, 756). Inasmuch as the Government was provided additional time to investigate and respond to Defendant's extremely late filed motion, it leaves to the Court's discretion whether this untimely motion ought to be striken for failure to comply with the Court's Order.

For the reasons set forth below, the Defendant's contentions are without merit, and thus the Motion to Suppress must be denied. In support of its arguments, the Government relies on its previous statement of facts and legal reasoning along with the additional arguments below.

## LEGAL ANALYSIS

**A. A person does not have a subjective, reasonable expectation of privacy in the parts of the home and curtilage which are readily viewable from a helicopter operating within normal, public airways.**

In his brief, Defendant argues that this court should ignore established Supreme Court precedent concluding that a person does not have a subjective, reasonable expectation of privacy in the parts of the home and curtilage that are viewable from a helicopter, as in this case. This Court should decline this invitation. As the Supreme Court stated in *Florida v. Riley*, the home and its curtilage are not necessarily protected from inspection under the Fourth Amendment activity

conducted by a person exposes themselves to public view and where the observation involves no physical invasion. 488 U.S. 445 (1989), citing *California v. Ciraolo*, 476 U.S. 207, at 213. In short, police may see what can be seen when they do so from a public vantage point. *Id*. In concluding there was no constitutional violation when police observed the interior of Riley's green house from an attitude of 400 feet, the court noted "[a]ny member of the public could legally have been flying over Riley's property in a helicopter at the altitude of 400 feet and could have observed Riley's greenhouse. The police officer did no more." Id.

Because the helicopter was not violating the law, there was no evidence that flights like the one at issue were rare, and no indication that the helicopter interfered with Riley's normal use of his property, the Court found he could not have reasonably expected his greenhouse was protected from public or official view. This was especially true where, as is the case all over this country, private and public commercial flight by airplane and helicopter is routine. Therefore, the Supreme Court held that the Fourth Amendment does not require a search warrant before police make observations from a helicopter operating within public airways.

In his brief, Defendant relies on two factual assertions, without support in the record, to argue the Court should ignore this precedent. One, he implies that helicopters rarely, if ever, travel overhead as the helicopter did in this case (Doc. 278 at 3). Second, he asserts the helicopter passed through airspace that was directly over the curtilage of Smith's home thereby acting as a physical trespass on his property. (Id. at 5). Neither of these contentions is true.

3

As to the first, the helicopter utilized by police in this instance is routinely operated in and around the Savannah-Chatham area, not just by police but another agency.[1] In fact, this aircraft is routinely flown by Chatham County Mosquito Control Aviation at altitudes between 100-300 feet when used to disperse mosquito control products. To be sure, most everyone in the Savannah area is familiar with the small yellow helicopter flying overhead during the balmy months where we hide from bugs. When the helicopter is being used for that function, it operates at a much lower altitude than it was used in this case – where it was operated at between 700-800 feet.

As to Defendant's second unsupported claim that the helicopter passed through airspace directly over the curtilage of his property, *Riley* makes clear that Defendant has no reasonable expectation of privacy against view of his property from an aircraft operating in navigable airspace. In this case, the helicopter was operated within the parameters of Air Traffic Control and FAA restrictions, therefore, Defendant would not have had any reasonable expectation of privacy in the view from the helicopter over his property even if had been operated there.  However, this helicopter never crossed over Defendant's property as it operated in an orbit approximately a half mile away. Moreover, the meeting observed occurred within the front driveway and backyard of Defendant's property. Police did not observe the interior of Defendant's home, or peer inside any shed or other building on the property. In that way, this case is even more clear on its facts than *Riley*, where police

---

[1] The facts relied up herein are taken from the Memorandum prepared by SPD Officer Chris Boyette, attached to this response as Exhibit A.

4

looked inside a greenhouse. If the defendant in Riley had no expectation of privacy inside that structure, it simply cannot be said Defendant had a reasonable expectation of privacy that his activity could not be viewed by an aircraft or helicopter operating in navigable airspace while he stood outside in the open within his yard. Defendant's amended motion to suppress should be denied.

### B. The inevitable discovery rule should apply even if there were a constitutional violation in this case.

The inevitable discovery doctrine acts as an exception to the exclusionary rule. See Nix v. Williams, 467 U.S. 431, 446 (1984). The Supreme Court has explained that the "[e]xclusion of . . .evidence that would inevitably have been discovered adds nothing to either the integrity or fairness of a criminal trial." Id. The doctrine generally requires that "the fact or likelihood that makes the discovery inevitable arise from circumstances other than those disclosed by the illegal search itself." United States v. Boatwright, 822 F.2d 862, 864-65 (9th Cir. 1987) see also Murray v. United States, 487 U.S. 533, 539 (1988) (holding that inevitable discovery "is in reality an extrapolation from the independent source doctrine: Since the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered."). The government bears the burden of showing by a preponderance of the evidence that "the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police." Nix, 467 U.S. at 447; see also United States v. Ramirez-Sandoval, 872 F.2d 1392, 1399 (9th Cir. 1989) ("following routine procedures, the police would inevitably have uncovered the evidence.").

Here, the investigation of Defendant and his codefendants had been underway for months at the time of these observations. Agents were actively surveilling a codefendant as part of an operation concerning a large shipment of controlled substances on the date in question. Agents had observed several codefendants meeting to coordinate money relating to this shipment and had been actively monitoring TIII communications which supported that these meetings were related to that incoming shipment. Additional TIII intercepts indicated to agents that coconspirators intended to meet with an individual involved in this resupply prior to observing a codefendant's vehicle travel to Defendant's residence. Still more TIII intercepts supported this and other meetings were related to the drug transaction. Based on this and other evidence, agents believed that Defendant, who had not yet been personally identified, was an active participant in the drug trafficking operation under investigation and decided to make contact with him for the purpose of a knock and talk.

Agents would have inevitably continued their investigation and attempted contact with Defendant at his residence regardless of their observations of activity outside his home from the helicopter. Agents intended to conduct a knock and talk so that they could identify Defendant, a necessary step in continuing their investigation of the drug trafficking operation by identifying one of its potential members. As they approached the home, however, Defendant was outside in his driveway. Immediately upon sight of police, Defendant discarded a bag of money there and attempted to walk away. Under these circumstances, police would have inevitably conducted themselves

in the same manner as they did that day – by stopping Defendant, observing the money bag, interviewing Defendant, conducting the protective sweep, and seeking a search warrant. This investigation was well underway at the time the helicopter flight took place, and the evidence would have inevitably been obtained. Therefore, the evidence should be admitted even if the observations of police from the helicopter were deemed unlawful. Therefore, the exclusionary rule should not be applied in this case.

### C. Even if the information observed by the helicopter was unlawfully obtained, the information in the affidavit supports probable cause.

The Eleventh Circuit applies a two-part test to determine whether evidence seized pursuant to the warrant is admissible where it is based in part on unlawfully obtained information. *United States v. Albury*, 782 F.3d 1285, 1291 (11th Cir. 2015). First, courts must "excise from the affidavit" any unlawfully obtained information and determine whether the remaining information supports a finding of probable cause. *Id*. If the remaining information supports a probable cause finding, courts must then determine whether the warrant would have been sought absent the unlawful conduct; if so, the evidence seized pursuant to the warrant is admissible. *Id*.

The paragraph in the Search Warrant[2] contains the following information:

> At approximately 1745 hrs Agents observed the Black Chevy Tahoe backed up to another vehicle, each with their trunks open, this occurred near 5611 La Roche Avenue, Savannah, GA. Briefly thereafter, Agents lost visual observation of the Chevy Tahoe briefly. Agents again made visual contact with the Chevy Tahoe, which began to travel north on Skidaway Road towards DeRenne Avenue. Agents then made contact with an individual at the 5611

---

[2] The search warrant affidavit was attached to the Government's original response as Attachment C. (Doc. 371)

> LaRoche Avenue address and recovered a large sum of U.S. currency located in a bag. Meanwhile, at 1801 hrs CRI 14-95 advised that GRAHAM had obtained cocaine of good quality and made arrangements to conduct a transaction with an unknown party.
>
> Att. C, p. 4

There is no reference to the observations of Defendant by helicopter in the affidavit. Therefore, nothing need be excised from it and agents still would have sought and received authorization for the search. As such, Defendants motion should be denied, and the evidence allowed.

## CONCLUSION

For the foregoing reasons, the Government moves this Court to deny Defendant's amended motion to suppress the search warrant and other evidence (Doc. 728).

This 14th day of April 2023.

        Sincerely,

        JILL E. STEINBERG
        UNITED STATES ATTORNEY

        */s/Frank M. Pennington, II*
        Frank M. Pennington, II
        Assistant United States Attorney
        Georgia Bar Number 141419

22 Barnard Street, Ste. 300
Savannah, GA, 31410
912-652-4422

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITD STATES OF AMERICA ) | |
| ) | |
| ) | CASE NO. 4:21-CR-111-6 |
| v. ) | |
| ) | |
| ) | |
| RAPHAEL SMITH ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT RAPHAEL SMITH'S AMENDED MOTION TO SUPPRESS SEARCH WARRANT AND OTHER EVIDENCE (Doc. 728)**

The undersigned AUSA certifies that a copy of this response has been filed electronically on the ECF system and therefore served on the Defendant.

This 14th day of March 2023.

Sincerely,

JILL E. STEINBERG
UNITED STATES ATTORNEY

*/s/Frank M. Pennington, II*
Frank M. Pennington, II
Assistant United States Attorney
Georgia Bar Number 141419

22 Barnard Street, Ste. 300
Savannah, GA, 31410
912-652-4422

9